1    WO

2

3

4

5

6                  IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9    Dennis M. Mastro, et al.              )    No. cv-09-01076-PHX-ROS
                                          )
10              Petitioners,              )    **ORDER**
                                          )
11   vs.                                  )
                                          )
12                                        )
     John Momot,                          )
13                                        )
                Respondent.               )
14                                        )
                                          )
15   _____)

16          Before the Court is Petitioners' Motion for a Temporary Restraining Order and

17   Preliminary Injunction (Doc. 9).  For the reasons stated herein, that Motion will be denied.

18                                  BACKGROUND

19          Petitioners Dennis, Michael, and Jeffrey Mastro and Respondent John Momot were

20   investors in three restaurants that were sold together with seven of Petitioners' restaurants in

21   which Respondent was not an investor.  All investors entered into an agreement regarding

22   how the proceeds would be distributed.  That agreement contained an arbitration clause

23   reading:

24
            Arbitration.  If a dispute arises out of or relates to this Agreement, the
25       relationships that result from this Agreement or the validity and application of
         any of the provisions of this  Section 4, and, if the dispute cannot be settled
26       through negotiation, the dispute shall be resolved exclusively through binding
         arbitration.
27
     It also contained a forum selection clause, which stated:
28

The Parties consent to personal jurisdiction for purposes of this Agreement in the State of Arizona, and agree that Maricopa County, Arizona will be proper venue for any action brought with respect to this Agreement.

A dispute arose as to the agreement and Respondent brought suit in Nevada state court contending that Petitioners failed to pay him sufficiently for his investments in the three restaurants in question. That suit was removed to federal court in the District of Nevada.

Petitioners filed a Petition to Compel Arbitration in this Court,[1] and now request a Temporary Restraining Order and Preliminary Injunction enjoining Respondent from prosecuting the Nevada case and requiring that he submit to arbitration in Arizona. Meanwhile, a Motion to Dismiss for Lack of Jurisdiction filed by Petitioners is pending in the Nevada case. Respondent seeks to expedite the Nevada proceedings.

STANDARD OF REVIEW

The standard for issuing a Temporary Restraining Order ("TRO") is the same as that for issuing a preliminary injunction. Gonzalez v. State, 435 F. Supp. 2d 997, 999 (D. Ariz. 2006). In the Ninth Circuit, there are two sets of criteria for a court to use when evaluating a request for preliminary injunctive relief. First, a plaintiff must show:

> (1) a strong likelihood of success on the merits,
>
> (2) the likelihood of irreparable injury to plaintiff if preliminary relief
> is not granted,
>
> (3) a balance of hardships favoring the plaintiff, and
>
> (4) advancement of the public interest.

---

[1] When filing their petition, in lieu of a complaint, Petitioners also asked the Court to issue an Order to Show Cause to be served with the Petition. The Proposed Order issued by Petitioners ordered Respondent to appear and show cause why the Court "should not grant the relief requested in the Petitioners' Petition for Order Compelling Arbitration and Staying State Court Proceedings." The Court refused because such a procedure is not grounded in the Federal Rules and essentially constitutes an improper request for injunctive relief made outside the strictures of Fed. R. Civ. P. 65 – rather extraordinary injunctive relief, in fact, as it asked this Court to enjoin another court's proceedings. Conferring with other District Justices in Phoenix, the Court learned today that no other judge issues Orders to Show Cause in lieu of applications for Temporary Restraining Orders and/or Preliminary Injunctions.

Cal. Pharmacists Ass'n v. Maxwell-Jolly, 563 P.3d 847, 849 (9th Cir. 2009). Alternately, a movant may "demonstrate[] '*either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.'" Id. These two tests represent a continuum; "[t]hus, the greater the relative hardship to [the movant] the less probability of success must be shown." Earth Island, 351 F.3d at 1298. However, it is not sufficient to demonstrate a mere probability of irreparable harm; rather, the movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter v. NRDC, 129 S. Ct. 365, 375 (2008).

## ANALYSIS

Because the Court concludes that Petitioners would have no entitlement to a Temporary Restraining Order or Preliminary Injunction from this Court under *any* arbitration agreement, it finds it unnecessary to consider the likely merits of Petitioners' Petition to Compel Arbitration at this stage of the proceedings.

The first consideration is one of comity. "The federal courts have long recognized that the principle of comity requires federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs." W. Gulf Maritime Assoc. v. ILA Deep Sea Local 24, 751 F.2d 721, 728 (5th Cir. 1985). In federal district courts, "the general principle is to avoid duplicative litigation." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976). A variety of mechanisms exist to deal with this issue: "[t]he venue transfer provision, 28 U.S.C. § 1404(a), may be invoked by the Government to consolidate separate actions. Or, actions in all but one jurisdiction may be stayed pending the conclusion of one proceeding. See Am. Life Ins. Co. v. Stewart, 300 U.S. 203, 215-16 (1937). A court may even in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere." Abbot Labs v. Gardner, 387 U.S. 136, 155 (1967).

Accordingly, "the doctrine of federal comity . . . permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93,

1   95 (9th Cir. 1982) (citing Church of Scientology of Cal. v. United States Dep't of the Army,

2   611 F.2d 738, 749 (9th Cir. 1979); Great N. RR Co. v. Nat'l RR Adjustment Bd., 422 F.2d

3   1187, 1193 (7th Cir. 1970)).[2]  "Normally, sound judicial administration would indicate that

4   when two identical actions are filed in courts of concurrent jurisdiction, the court which first

5   acquired jurisdiction should try the lawsuit . . . .  However, this 'first to file' rule is not a rigid

6   or inflexible rule to be mechanically applied, but rather is to be applied with a view to the

7   dictates of sound judicial administration."  Id.   For instance, where the second-filed action

8   had already proceeded to judgment on the merits and appeal, efficiency was best served by

9   overlooking the first filed rule.  Church of Scientology, 611 F.2d at 750.

10          Here, the Nevada action was first filed and there is no obvious reason of economy to

11  proceed here in spite of that action and, for all intents and purposes, to enjoin that action from

12  proceeding.  Petitioner claims that this Court alone has the power to compel arbitration in

13  Arizona under the Federal Arbitration Act ("FAA").  Even if this is true, which is unclear,

14  it does not provide justification for this Court to assume that the Nevada court is unable to

15  police its own jurisdiction and stay its proceedings or transfer venue as necessary.  For that

16  reason alone, this application for injunctive relief will be denied.

17          Petitioners' Motion also fails because Petitioners have not demonstrated that there is

18  a likelihood of irreparable harm, as required for preliminary injunctive relief.  In order to

19  demonstrate such, Petitioners would have to show that there is a likelihood that: (a) the

20  Nevada court would fail to properly police its own jurisdiction and thus not dismiss, transfer,

21

22          [2] Petitioners note that some courts have emphasized that the first-to-file rule applies
only in "mirror-image" actions.  See, e.g., Big Dog Motorcycles, LLC v. Big Dog Holdings,
23  Inc., 351 F. Supp. 2d 1188, 1194 (D. Kan. 2005).  Accordingly, where two suits raise
    "distinct issues" they must both be allowed to go forward.  While this suit may technically
24  raise distinct issues from that in the Nevada case, it is inevitable that the question of whether
    arbitration is mandatory will arise in the course of those proceedings.  It also involves the
25  same parties.  See Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982).
26  More importantly, this suit was filed specifically to determine the course of an action filed
    in a fellow district court; the principles of comity between federal courts apply even more
27  strongly here than they do in a mere mirror-image case, particularly in the context of
28  injunctive relief.

or stay proceedings so that arbitration could proceed,[3] or (b) Respondent would fail to participate in arbitration in this district unless actually compelled by this Court. On the first point, this Court cannot premise injunctive relief on the theory that another District Court will be derelict in its duty, nor does any evidence suggest that it will be. On the second, even if the Nevada court cannot *compel* Respondent to participate in arbitration in Arizona, no evidence suggests that Respondent will not *willingly* participate in arbitration if the case is found by the arbitrable by the Nevada court. In fact, it appears that Respondent is currently participating – to the extent required at this stage – in arbitration proceedings in Arizona. Plaintiff has failed to demonstrate that either of these circumstances is likely to occur, much less both, and has not pointed to any other source of irreparable harm beyond a potential mild delay in the beginning of arbitration proceedings.

Even were it a foregone conclusion that Petitioners are entitled to arbitrate its case in Arizona, it is unclear that the Nevada court could not order this. Section 3 of the Arbitration Act states "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trail of the action until such arbitration has been had." 9 U.S.C. § 3. The Nevada court can certainly stay its proceedings while arbitration goes forward.

However, Petitioner relies upon a decision of the Seventh Circuit to argue that the Nevada court cannot compel arbitration in Arizona as required in by the contract's forum selection clause. Merrill Lynch, Pierce, Fenner & Smith v. Lauer, 49 F.3d 323 (7th Cir. 1995). In that case, the Court noted that Section 4 of the FAA "explicitly provides for a judicial remedy where one party refuses to arbitrate a dispute." That section states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order that such arbitration proceed in the manner provided for in such agreement. . . . The hearing and proceedings, under such

---

[3] Assuming that such a course of action would be the legally correct one.

agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4. The Seventh Circuit found that a district court cannot compel arbitration in another district, or in its own district in the face of an adverse forum selection clause. Lauer, 49 F.3d at 329.

Respondent reasonably points out, however, that the Ninth Circuit has not adopted the Seventh Circuit's logic. In fact, it has perhaps implicitly criticized it, writing that "by its terms, § 4 only confines the arbitration to the district in which the petition to compel is filed. It does not require that the petition be filed where the contract specified that arbitration should occur." Textile Unlimited v. A..BMH and Co., 240 F.3d 781, 784 (9th Cir. 2001) (citing Continental Grain Co. v. Dant & Russell, 118 F.2d 967, 969 (9th Cir. 1941)); see also, Cortez Byrd Chips v. Bill Harbert Constr. Co., 529 U.S. 193, 204 (2000) (holding "the permissive view of FAA venue provisions entitled to prevail.")). Petitioners attempt to distinguish Textile Unlimited by noting that it involves an action to enjoin arbitration rather than one to compel arbitration. That may, in fact, be correct. However, given the newness of the issue in this circuit, it does raise questions about Petitioner's likelihood of success on the merits.

Nor is the Court convinced that the forum selection clause mandates that the venue is only in the District of Arizona. In interpreting a forum selection clause, courts look to "general principles for interpreting contracts." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999). "Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first." Doe v. AOL, LLC, 552 F.3d 1077 at * 10 (9th Cir. 2009) (citing Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987)). The language of this clause is ambiguous. The word "proper" would ordinarily not be exclusive. While some case law from other circuits exists finding venue clauses exclusive in certain cases, that precedent could be read as relying on the existence of mandatory words such as

"shall," which is not present here.  <u>See</u>, <u>e.g.</u>, <u>Milk 'N' More, Inc. v. Beavert</u>, 963 F.2d 1342, 1345-46 (10th Cir. 1992) (a clause that stated "venue shall be proper under this agreement in Johnson County, Kansas" was mandatory in part because "[t]he use of the word 'shall' generally indicates a mandatory intent unless a convincing argument to the contrary is made.").  The issue need not be decided at this time, however this too weighs against a finding that Petitioners have met the high burden necessary for preliminary injunctive relief.

Finally, as a policy matter, given that Petitioner brought this action after filing a motion to dismiss in the Nevada under which it could receive the same adjudication of the jurisdictional question, and has *already asked the Nevada court to compel arbitration*, granting the requested relief would be an encouragement of forum shopping.

Accordingly,

**IT IS ORDERED** Petitioner's Motion (Doc. 9) is **DENIED**.

DATED this 9th day of July, 2009.

Roslyn O. Silver
United States District Judge